IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Beverly L. McLeod, ) | C/A No. 0:13-1703-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| _____) | |

    This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 DSC and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff, Beverly L. McLeod ("McLeod"), who is self-represented, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

    Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v.

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).



Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

**ADMINISTRATIVE PROCEEDINGS**

In November 2010, McLeod applied for DIB and SSI, alleging disability beginning September 21, 2010. McLeod's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on December 3, 2012, at which McLeod, who was represented by William Hatfield, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on December 13, 2012 denying benefits and concluding that McLeod was not disabled. (Tr. 16-24.)

McLeod was born in 1964 and was forty-five years old at the time of her amended alleged disability onset date. (Tr. 156.) She has a high school education and past relevant work experience as a dietary aide at a nursing home. (Tr. 187, 188.) McLeod alleged disability since September 21, 2010 due to a pinched nerve in her back, and pain in her back and legs. (Tr. 187.)

In applying the five-step sequential process, the ALJ found that McLeod had not engaged in substantial gainful activity since her alleged onset date. The ALJ also determined that McLeod's degenerative disc disease was a severe impairment. However, the ALJ found that McLeod did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that McLeod retained the residual functional capacity to perform medium work, and therefore, remained capable of performing past relevant work as a kitchen worker, dietary aide, pie maker and general dessert maker. Alternately, the ALJ found that McLeod's impairments did not

prevent her from doing any other kind of work. Therefore, the ALJ found that McLeod had not been under a disability from September 21, 2010 through the date of his decision. (Tr. 18-23.)

McLeod, now proceeding without counsel, submitted additional evidence to the Appeals Council, which denied her request for review on June 14, 2013, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## DISCUSSION

McLeod generally argues that she is unable to work because of her pain and suffering from 2010 through 2013. Upon review of the entire record and the ALJ's decision, McLeod cannot



demonstrate that the ALJ's decision is unsupported by substantial evidence or controlled by an error of law.

In reviewing the ALJ's application of the five-step sequential process, the first step appears to be undisputed. McLeod has not engaged in substantial gainful activity since her alleged onset date.

At Step Two, the ALJ found that McLeod had at least one severe impairment, degenerative disc disease. The claimant bears the burden at this step to show that she has a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If an impairment is only "a slight abnormality" which causes only "minimal effect on the individual" and does not interfere with the individual's ability to work, the impairment is not considered to be severe. Evan v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1981).

The ALJ found that McLeod's high blood pressure, asthma, and depression were non-severe impairments. Specifically, the ALJ found that her high blood pressure was controlled with medication. He also found that McLeod was on prescribed medication for her asthma and that the evidence did not reveal any hospitalizations or emergency room visits secondary to any asthma symptoms or asthma exacerbations. The ALJ found that McLeod had not been hospitalized for any mental condition and that she had no restrictions in activities of daily living, mild difficulties in social functioning and in concentration, persistence, and pace, and no episodes of decompensation of an extended duration. Moreover, the ALJ found that there have been no significant limitations or restrictions as a result of these impairments.



McLeod cannot demonstrate any prejudicial error by the ALJ with regard to Step Two. McLeod's documentation submitted with her application for disability did not identify the impairments that the ALJ found to be non-severe.  Further, McLeod's testimony fails to indicate that these impairments have more than minimal effect on her or otherwise interfere with her ability to work.  The focus of McLeod's allegations of disability appear to surround her pain; moreover, McLeod's argument to the court generally references her pain and suffering.  Finally, the ALJ did acknowledge these alleged impairments in analyzing McLeod's residual functional capacity, discussing McLeod's testimony with regard to her asthma and high blood pressure as well as the medical records documenting her depression.

Even if the ALJ erred in failing to find any of these impairments were severe, the court finds that any error is harmless, as the ALJ continued with the sequential process and considered the effects of all of McLeod's impairments in formulating her residual functional capacity.  See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."); Washington v. Astrue, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) (adopting Report and Recommendation that included a collection of cases and finding "no reversible error where the ALJ does not find an impairment severe at step two provided that he or she considers that impairment in subsequent steps").

At Step Three, it appears to be undisputed that McLeod's impairments do not meet or equal the requirements of the Listings; therefore, the court next examines whether the ALJ erred at Step Four of the sequential process in determining that McLeod could perform her past relevant work. In evaluating this step, the court first examines the ALJ's residual functional capacity analysis.



A claimant's residual functional capacity is the most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing RFC, an ALJ should scrutinize "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's RFC. As stated above, the ALJ found that McLeod had the residual functional capacity to perform medium work.

In support of this finding, the ALJ explicitly discussed the medical evidence of record, which included medical records from McLeod Family Medicine Center, Three Rivers Therapy Associates, Pee Dee Orthopaedic Associates, and Hope Health, as well as a radiology report from Image Care. The ALJ stated that records from August and September 2010 revealed complaints of thigh pain, tenderness and spasm in the right lumbosacral area into the right hip and leg, and complaints of back pain with radiation into the right hip and leg. However, the ALJ observed that McLeod's physical examination in September 2010 "was essentially within normal limits except for dome forward flexion and extension reproduced low back pain." (Tr. 20.) The ALJ found that the MRI findings from October 2010 revealed mild chronic L4-5 radiculopathy. The ALJ indicated that McLeod's subsequent treatment included epidural steroid injections, and in February 2011, a prescription for Celebrex and physical therapy for her lumbar spine symptoms as well as hot and cold modalities. The ALJ stated that, also in February 2001, McLeod continued to report low back pain with no improvement with treatment; however, her "[p]hysical examination was essentially within normal limits except for some tenderness and spasm in the right lumbosacral area into the right hip and leg." (Id.) Although McLeod reported right foot pain and leg pain in March 2011, her examination was

essentially normal with only some mild edema. The ALJ observed that McLeod was seen in August 2011 secondary to depression and weakness. The ALJ stated that her "[p]hysical examination showed no significant abnormalities. There was muscle spasm noted in the lumbar spine; however, there was full range of motion noted otherwise. There was no neurological or sensory deficit and deep tendon reflexes were preserved and symmetric. Clinical assessment was atypical depressive disorder with muscle weakness and menopausal disorder." (Id.)

The ALJ stated that in September 2011, McLeod complained of ongoing back pain with radiation that was stable and occurred intermittently. McLeod "indicated that her symptoms were aggravated by bending, changing positions, daily activities, rolling over in the bed, sitting, twisting and walking. However, her symptoms were relieved by heat, lying down and physical therapy." (Tr. 21.) The ALJ observed that in February 2012, when McLeod complained of joint stiffness and anxiety and indicated that her pain was due to the rainy weather and radiated down her right leg, McLeod's "[m]usculoskeletal examination was positive for back and joint pain but negative for any joint swelling, muscle weakness and neck pain. Physical examination revealed her gait was normal [and McLeod] was counseled on the importance of weight loss." (Id.) In March 2012, McLeod reported symptoms related to depression, and examination revealed that she was alert and oriented and demonstrated appropriate mood and affect. McLeod was diagnosed with atypical depressive disorder. The ALJ observed that additional treatment notes reflected depression with a global assessment functioning score of 55 and indicated that McLeod's depression was associated with chronic pain and irritability. In May 2012, McLeod reported that her depression was better on medication.

The ALJ further summarized McLeod's hearing testimony as follows:

> The claimant testified she started having problems with mental condition, back and leg in 2010. She indicated her pain is severe at times and she has to lie down. She then indicated her pain was severe all the time. She testified that she has depression from her pain and that she is on medication. In addition, she stated that her blood pressure was controlled on medication and she was on medication for asthma. The claimant testified that she was able to walk from the parking lot into the hearing office and that she could walk to the parking lot and come back into the building. She testified to a little problem with sitting and stated that her legs get numb and that she could sit 10-15 minutes. She also testified that she could lift 10-15 pounds with both hands.

(Id.) However, the ALJ found that McLeod's "allegations concerning impairments/disability and the inability to work are not substantiated by the total evidence of record and are not credible." (Id.) In reaching this conclusion, the ALJ stated that (1) the evidence confirms diagnostic findings consistent with mild chronic L4-5 radiculopathy; (2) the evidence has shown that McLeod underwent lumbar steroid injections and physical therapy; (3) McLeod's physical examinations have been essentially normal despite reports of no improvement with her treatment; and (4) McLeod has no neurological or sensory deficits and deep tendon reflexes have been preserved and symmetric. The ALJ further found that McLeod was on medication for her depression, which the evidence reflects was associated with her pain and irritability. The ALJ indicated that McLeod is able to watch television, attend church, and perform various activities around the home, and that despite her testimony that she could only sit for ten to fifteen minutes, McLeod sat for at least thirty-five minutes at the hearing before the discussion of any limitations pertaining to her sitting occurred.

The ALJ also found that no treating or examining physician has indicated that McLeod is totally disabled or even more limited than determined in his decision.

> In summary the ALJ stated that
>
> > [a]fter careful review of the entire record, the undersigned finds that the evidence as to the claimant's condition, activities, capabilities and other subjective symptoms is not consistent with the degree of disabling impairments she alleged. Although the claimant has impairments that impose some limitations upon her ability to work, the evidence fails to substantiate that her impairments, either singly or in combination, are of the severity as to preclude the performance of all work-related activities. Upon review of the total evidence of record, and in consideration of the combined effect of the claimant's impairments, including all severe impairments, nonsevere impairments, and subjective complaints, the undersigned finds claimant's degenerative disc disease could reasonably be expected to restrict the claimant to the performance of medium work.

(Tr. 22.)

Upon review the record as a whole, the court finds that McLeod has not demonstrated that the ALJ's residual functional capacity analysis is unsupported by substantial evidence of controlled by an error of law. In compliance with SSR 96-8p, the ALJ provided an extensive narrative discussion, which included a full discussion of the medical and nonmedical evidence. The ALJ's discussion explained his resolution of inconsistencies or ambiguities of the evidence in the case record, such as his evaluation of McLeod's subjective complaints as well as the medical evidence.

To the extent that McLeod's own testimony and self-reports indicate additional limitations, the ALJ found McLeod to be not entirely credible, and the court finds that McLeod cannot demonstrate that this determination is unsupported or controlled by an error of law. It is the ALJ's duty to weigh credibility, and the court finds the ALJ's conclusion comfortably within the bounds of substantial evidence. See Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996) (discussing the two-step process in evaluating subjective complaints to determine whether a person is disabled by pain or other symptoms); id. at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the

[Commissioner]"). Moreover, the ALJ's decision clearly reflects that he considered the relevant factors in weighing McLeod's credibility. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (listing the relevant factors for consideration by the Commissioner in evaluating subjective complaints). Although McLeod's subjective complaints "may not be disregarded solely because they are not substantiated by objective medical evidence," SSR 96-7p, the ALJ properly considered the objective medical evidence and other objective evidence in evaluating McLeod's complaints and the extent to which they impair her ability to work. See Craig, 76 F.3d at 595. Therefore, the court finds that McLeod cannot demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error of law. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

As pointed out by the Commissioner, the only other evidence of record that may indicate additional limitations is an opinion from a state agency record reviewer, Dr. Mary Lang, dated April 2011. Dr. Lang found that McLeod had functional limitations consistent with light work with no more than frequent pushing and pulling with her lower right extremity; only occasional stooping, crouching, and crawling; and frequent climbing, balancing, kneeling, and overhead lifting. (Tr. 566-73.) Even if the ALJ erred in failing to adequately explain his evaluation of this opinion and erred in failing to reduce McLeod's residual functional capacity to include these limitations, the court finds

any such error to be harmless as the ALJ found that McLeod could perform her past relevant work as a pie maker. As argued by the Commissioner, "this job requires light exertion, no more than frequent reaching, and no climbing, balancing, stooping, kneeling, crouching, or crawling." (Def.'s Br. at 6 n.8, ECF No. 28 at 6 n.8) (citing Dictionary of Occupational Titles ("DOT") # 313.361-038).

McLeod cannot show that the ALJ's determination that she could perform her past relevant work is unsupported by substantial evidence or controlled by an error of law. As stated above, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. "Past relevant work" is defined by the regulations as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1); see also 20 C.F.R. §§ 404.1574, 416.974 (discussing substantial gainful activity). In determining whether a claimant can perform her past relevant work, the Commissioner "will ask [the claimant] for information about work you have done in the past" and "may also ask other people who know about your work" and "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence [he] need[s] to help [him] determine whether [a claimant] can do [her] past relevant work, given [her] residual functional capacity." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). Further, a claimant is generally not disabled if she can return to her past relevant work as she performed it or as it is customarily performed throughout the economy. Id.; SSR 82-61. In this case, the vocational expert testified that an individual with McLeod's residual functional capacity could perform her past relevant work, which the vocational expert described as a dietary aide (DOT # 319.677-04, medium unskilled work with an SVP of 2), kitchen

helper (DOT # 318.687-010, medium unskilled work with an SVP of 2), pie maker (DOT # 313.361-038, light semi-skilled work with an SVP of 6), and general dessert maker including pastry maker (DOT # 313.381-026, medium semi-skilled work with an SVP of 7). Relying on this testimony, the ALJ found that McLeod retained the residual functional to perform this work. Once the ALJ determined that McLeod retained the residual functional capacity to return to her past relevant work, the ALJ could determine that McLeod was not disabled and review did not need to proceed any further. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

## ORDER

Based on the foregoing, McLeod is unable to demonstrate that the Commissioner's decision that she is not disabled is unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. Therefore, it is hereby

**ORDERED** the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 29, 2014
Columbia, South Carolina